1  JENNIFER L. KELLY (CSB No. 193416)
   jkelly@fenwick.com
2  MARY E. MILIONIS (CSB No. 238827)
   mmilionis@fenwick.com
3  CLIFFORD WEBB (CSB No. 260885)
   cwebb@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, CA  94104
   Telephone:   415.875.2300
6  Facsimile:   415.281.1350

7  Attorneys for Defendants
   DEMANDFORCE, INC. and
8  INTUIT INC.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12

13  PROSOLUTIONS SOFTWARE, INC., a      Case No. CV-12-08342 MWF (AGR)
    corporation,
14                                       **MEMORANDUM OF POINTS AND
15              Plaintiff,                AUTHORITIES IN SUPPORT OF
                                          DEFENDANTS' MOTION TO
16      v.                                DISMISS PLAINTIFF'S FIRST
                                          AMENDED COMPLAINT FOR
17  DEMANDFORCE, INC., a corporation;     FAILURE TO STATE A CLAIM,
    INTUIT, INC., a corporation; and      OR, IN THE ALTERNATIVE, TO
18  DOES 1 through 100, inclusive,        STRIKE PORTIONS THEREOF**

19              Defendants.               Date:       November 26, 2012
                                          Time:       10:00 a.m.
20                                        Courtroom: 1600
                                          Judge:      Hon. Michael W. Fitzgerald
21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MPA ISO MOTION TO          CASE NO. CV-12-08342 MWF (AGR)
DISMISS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................. 1

STATEMENT OF ALLEGED FACTS ................................................................ 3

      A.    The Parties and Their Businesses ............................................. 3

      B.    Plaintiff's Lawsuits and Claims .............................................. 5

DISCUSSION ...................................................................................................... 6

I.      LEGAL STANDARDS .......................................................................... 6

II.     INTUIT SHOULD BE DISMISSED FROM THE ACTION BECAUSE PLAINTIFF HAS NOT ALLEGED ANY WRONGDOING ON ITS PART. ................................................................ 8

III.   PLAINTIFF HAS FAILED TO ALLEGE ANY SUPPOSED MISREPRESENTATIONS WITH SUFFICIENT PARTICULARITY. ............................................................................... 10

IV.   PLAINTIFF'S LANHAM ACT CLAIM FAILS BECAUSE PLAINTIFF DOES NOT ALLEGE THAT DEMANDFORCE ENGAGED IN "COMMERCIAL ADVERTISING OR PROMOTION." ...................................................................................... 12

V.    PLAINTIFF DOES NOT ALLEGE THE REQUIRED ELEMENTS FOR A DMCA CIRCUMVENTION CLAIM. ..................... 14

      A.    Actual Circumvention Is Required and Plaintiff Has Failed to Plead It. .............................................................................. 14

      B.    Plaintiff's "Stored Data" Is Not a Protectable Work. ........................ 15

VI.   PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE DEFAMATION OR PRODUCT DISPARAGMENT .................................. 17

VII.  PLAINTIFF'S INTENTIONAL INTERFERENCE CLAIMS FAIL, REGARDLESS OF THE PLEADING STANDARD. ................................. 19

      A.    Plaintiff's Intentional Interference Claim Is Preempted to the Extent It Is Based on Demandforce's Alleged Copying of the Stored Data. .......................................................................... 19

      B.    Regardless of Preemption, Plaintiff Has Failed to Allege All of the Required Elements of an Intentional Interference Claim. ........................................................................................ 22

VIII. PLAINTIFF CANNOT STATE A CLAIM FOR VIOLATION OF CALIFORNIA PENAL CODE § 502. ................................................... 23

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

IX.   REGARDLESS OF THE APPLICABLE PLEADING
      STANDARD, PLAINTIFF'S UCL CLAIM FAILS. ................................... 24

CONCLUSION.................................................................................................. 24

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Ins. Co. v. Countrywide Fin. Corp.,*
842 F. Supp. 2d 1216 (C.D. Cal. 2012) ................................................ 7

*Altera Corp v. Clear Logic, Inc.,*
424 F.3d 1079 (9th Cir. 2005) ........................................................... 21

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180
(S.D. Cal. Apr. 28, 2011) ................................................................ 8

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................... 6

*Avery Dennison Corp. v. Acco Brands, Inc.,*
No. CV99-1877, 2000 WL 986995 (C.D. Cal. Feb. 22, 2000) ............ 13

*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.,*
No. C-09-00882, 2010 WL 890048 (C.D. Cal. Mar. 8, 2010) ........ 17, 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................. 6, 7

*Belodoff v. Netlist, Inc.,*
No. 07-00677, 2008 WL 2356699 (C.D. Cal. May 30, 2008) .............. 7

*Branch v, Tunnel,*
14 F.3d 449 (9th Cir. 1994) ............................................................... 4

*Burch v. GMAC Mortg., LLC,*
No. C-09-4214, 2010 U.S. Dist. LEXIS 23659
(N.D. Cal. Mar. 15, 2010) ................................................................ 8

*Cabral v. Supple, LLC,*
No. 12-00085, 2012 U.S. Dist. LEXIS 137365
(C.D. Cal. Sept. 19, 2012) ...................................................... 7, 12, 19

*Cazares v. Pacific Shore Funding,*
No. CV04-2548, 2006 WL 149106 (C.D. Cal. Jan. 3, 2006) .............. 5

*Champlaie v. BAC Home Loans Servicing, LP,*
706 F. Supp. 2d 1029 (E.D. Cal. 2009) ............................................. 8

*Clegg v. Cult Awareness Network,*
18 F.3d 752 (9th Cir. 1994) ............................................................... 7

*Coastal Abstract Serv. v. First Am. Title,*
173 F.3d 725 (9th Cir.1999) ............................................................ 13

*Coto Settlement v. Eisenberg,*
593 F.3d 1031 (9th Cir. 2010) ....................................................... 4, 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Dish Network LLC v. World Cable Inc.*,
___ F. Supp. 2d ___, 2012 WL 4470443 (E.D.N.Y. Sept. 28, 2012) ................. 15

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) .............................................................. 22

*Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) .............................................................. 11

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) .................................................................................. 13

*Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*,
499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) .................................... 16

*Graphic Arts Sys. v. Scitex Am. Corp.*,
No. CV 92-6997, 1993 U.S. Dist. LEXIS 21052
(C.D. Cal. May 25, 1993) ...................................................................................... 4

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
808 F. Supp. 2d 552 (S.D.N.Y. 2011) .................................................................. 9

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
497 F. Supp. 2d 627 (E.D. Pa. 2007) ................................................................. 14

*Henderson v. J.M. Smucker Co.*,
No. 10-4524, 2011 WL 1050637 (C.D. Cal. March 17, 2011) ............................. 8

*In re Cal. Title Ins. Antitrust Litig.*,
No. 08-01341, 2009 U.S. Dist. LEXIS 43323
(N.D. Cal. May 21, 2009) ...................................................................................... 9

*In re Tobacco II Cases*,
46 Cal. 4th 298, 93 Cal.Rptr.3d 559 (2009) ...................................................... 24

*Inst. of Veterinary Pathology, Inc. v. Cal. Health Laboratories, Inc.*,
116 Cal. App. 3d 111, 172 Cal. Rptr. 74 (1981) .................................................. 9

*Intri-Plex Technologies, Inc. v. Crest Grp., Inc.*,
499 F.3d 1048 (9th Cir. 2007) .............................................................................. 7

*Isuzu Motors Ltd. v. Consumer Union of Am., Inc.*,
12 F. Supp. 2d 1035 (C.D. Cal. 1998) ............................................................... 18

*Kilopass Tech., Inc. v. Sidense Corp.*,
Nos. 10-02066, 11-04112, 2012 WL 4497346
(N.D. Cal. Sept. 28, 2012) .................................................................................. 11

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .............................................................................. 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) .............................................................................. 15

*Licata & Co. Inc. v. Goldberg*,
812 F. Supp. 403 (S.D.N.Y. 1993) ..................................................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MPA ISO MOTION TO
DISMISS

iv

CASE NO. CV-12-08342 MWF (AGR)

*Mahru v. Superior Court,*
191 Cal. App. 3d 545 (1987) ...................................................... 23

*Microtec Research, Inc. v. Nationwide Mut. Ins. Co.,*
40 F.3d 968 (9th Cir. 1994) ...................................................... 17

*Montz v. Pilgram Films & Television, Inc.,*
No. 08-56954, 2011 U.S. App. LEXIS 9099
(9th Cir. May 4, 2011) ............................................................. 20

*Moore v. Kayport Package Express, Inc.,*
885 F.2d 531 (9th Cir. 1989) ................................................... 11

*Nat'l Basketball Ass'n v. Motorola, Inc.,*
105 F.3d 841 (2d Cir. 1997) .............................................. 20, 21

*Oracle Corp. v. SAP AG,*
734 F. Supp. 2d 956 (N.D. Cal. 2010)........................................ 9

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.,*
50 Cal. 3d 1118, 270 Cal. Rptr. 1 (1990) ................................ 22

*Parrino v. FHP, Inc.,*
146 F.3d 699 (9th Cir. 1998) ................................................. 4, 7

*Polygram Records, Inc. v. Superior Court,*
170 Cal. App. 3d. 543, 216 Cal. Rptr. 252 (1985) ................... 17

*Rpost Holdings, Inc. v. Trusifi Corp.,*
No. 11-2118, 2011 WL 4802372 (C.D. Cal. Oct. 11, 2011) ........... 11

*Schreiber Distrib. Co. v. ServWell Furniture Co.,*
806 F.2d 1393 (9th Cir. 1986) ................................................. 11

*Selby v. New Line Cinema Corp.,*
96 F. Supp. 2d 1053 (C.D. Cal. 2000) ..................................... 20

*Semi-Materials Co., Ltd. v. SunPods, Inc.,*
No. 11-CV-0671, 2012 U.S. Dist. LEXIS 128584
(N.D. Cal. Sept. 10, 2012) ....................................................... 23

*Seng-Tiong Ho v. Taflove,*
648 F.3d 489 (7th Cir. 2011) .................................................. 20

*Shwarz v. United States,*
234 F.3d 428 (9th Cir. 2000) ..................................................... 7

*Steckman v. Hart Brewing Inc.,*
143 F.3d 1293 (9th Cir. 1988) ................................................... 7

*Sybersound Record, Inc. v. UAV Corp.,*
517 F.3d 1137 (9th Cir. 2008) ................................................ 21

*Thompson v. Paul,*
657 F. Supp. 2d 1113 (D. Ariz. 2009) ....................................... 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
    ___ F. Supp. 2d. ___, 2012 WL 994674
    (N.D. Cal. Mar. 23, 2012) ............................................................ 11

*TYR Sport Inc. v. Warnaco Swimwear, Inc.*,
    679 F. Supp. 2d. 1120 (C.D. Cal. 2009) ....................................... 17

*U.S. Ex Rel. Berge v. Bd. of Trustees of Univ. of Ala.*,
    104 F.3d 1453 (4th Cir.) ............................................................... 20

*United States v. Bestfoods*,
    524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) .................... 8

*United States v. Broadway Constr., Inc.*,
    No. 97 C 8284, 1998 WL 246385 (N.D. Ill. Apr. 24, 1998) .......... 14

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................... 11

*Wild v. NBC Universal, Inc.*,
    788 F. Supp. 2d. 1083 (C.D. Cal. 2011) ................................. 19, 21

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ........................................................ 6

**STATUTES**

15 U.S.C. §1125 ............................................................... *passim*

17 U.S.C. § 102 ......................................................................... 20

17 U.S.C. § 103 ......................................................................... 20

17 U.S.C. § 106 .................................................................... 20, 21

17 U.S.C. § 301 ......................................................................... 20

17 U.S.C. § 1201 ............................................................. 6, 14, 15

California Business and Professions Code § 17200 .............. 6, 11, 24

California Business and Professions Code § 17500 .................... 11

California Penal Code § 502 .................................................. *passim*

**RULES**

Federal Rule of Civil Procedure 1 ............................................. 8

Federal Rule of Civil Procedure 8 ....................................... 8, 10

Federal Rule of Civil Procedure 9 .................................... *passim*

Federal Rule of Civil Procedure 12 ................................. 7, 8, 12

Federal Rule of Evidence 201 ................................................... 5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

Plaintiff ProSolutions Software, Inc. is a provider of point-of-sale (POS) software for salons and spas.  Its First Amended Complaint ("FAC") seeks damages and an injunction against Defendant Demandforce, Inc., which provides marketing and communications software for small local businesses that works in tandem with POS software, including Plaintiff's.  Plaintiff also seeks relief against Demandforce's parent company, Intuit Inc., although Intuit is not alleged to have done anything other than own Demandforce.  Plaintiff's claims against both Intuit and Demandforce (collectively, "Defendants") are premised on its general theory that Demandforce is: (1) misrepresenting its relationship with Plaintiff and/or the quality of Plaintiff's software; and (2) inducing Plaintiff's subscribers to breach their license with Plaintiff by allowing Demandforce to access these subscribers' customer data, which data Plaintiff somehow claims to own.  Despite having had two attempts to articulate a viable legal theory, Plaintiff has fallen far short of stating a viable claim under applicable standards.

As a preliminary matter, Plaintiff has not stated any claims against Intuit.  Simply alleging that Intuit is the parent company of Demandforce is not nearly enough to bring it into this lawsuit.  Intuit should be dismissed from the case.

Plaintiff's claims against Demandforce are likewise deficient.  First, and most broadly, Plaintiff's claims for violation of the Lanham Act, intentional interference with contract, and violation of California's Unfair Competition Law (the "UCL") are each premised, at least in part, on Plaintiff's assertion that Demandforce made allegedly false and deceptive statements concerning Plaintiff and its software.  These claims thus sound in fraud and must meet the heightened pleading requirements of Rule 9(b).  They do not.  Indeed, nowhere in the FAC does Plaintiff allege what Demandforce purportedly said, much less when and where it said it, and to whom.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

These and Plaintiff's other claims suffer numerous additional flaws:

- **Count I (Violation of the Lanham Act)**: The FAC does not allege that Demandforce's alleged statements about Plaintiff and its software were made in "commercial advertising or promotion," as required by Section 43(a) of the Lanham Act; the single, conclusory allegation that Demandforce made statements in "promotions, advertising and marketing" (FAC at ¶ 13) is too vague and generalized to distinguish between non-actionable individualized statements and the types of widespread commercial advertising the Lanham Act regulates.

- **Count II (Violation of Digital Millennium Copyright Act)**: Plaintiff's claim under the anti-circumvention provision of the DMCA fails to plead facts in support of two critical elements: one, that Demandforce actually *circumvented* a technological measure that controls access to a work; and two, that Demandforce gained access, through such circumvention, to a work that is *copyrighted*.

- **Count III (Defamation)**: This claim is premised solely on an assertion that Demandforce disparaged the quality of Plaintiff's product. The law is clear, however, that a claim for defamation cannot be premised on allegations about a plaintiff's *product*, as opposed to the plaintiff itself.

- **Counts IV and V (Intentional Interference with Contract)**[1]: To the extent these claims are premised on a theory that Demandforce "harvested" (*i.e.*, copied) Plaintiff's subscribers' customer data, they are preempted by the Copyright Act. The FAC also fails to plead the necessary facts in support of two elements of this claim; namely, (1) the identity of the subscribers whose contracts were interfered with and (2)

---

[1] It is unclear why Plaintiff has attempted to assert this claim as two separate counts. For the purposes of this motion, Defendants will deal with these counts as though all allegations are made within a single cause of action.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

any actual breach or disruption of Plaintiff's contract with any such subscribers.

- **Count VI (Violation of CA Penal Code § 502)**:  Plaintiff lacks standing to pursue this claim because it does not (and cannot) allege that it is the owner or lessee of the computer system that allegedly was unlawfully accessed.  To the contrary, Plaintiff admits the computer systems at issue were owned by Plaintiff's subscribers.

- **Count VII (Violation of California's UCL)**: This claim fails because the predicate claims on which it is based fail.  In addition, to the extent this claim is based on allegedly fraudulent business practices, it fails for the further reason that Plaintiff does not allege any reliance by any of its subscribers on the purported misrepresentations—a necessarily element for claims brought under the UCL's fraud prong.

Absent any facts supporting Plaintiff's theory that Demandforce acted in a manner that violates some law or contract, the threadbare allegations of the FAC simply do not show that Plaintiff is entitled to any relief.  In view of the significant defects described herein—some of which are fatal—Defendants request that the FAC be dismissed in its entirety.

## STATEMENT OF ALLEGED FACTS[2]

### A.   The Parties and Their Businesses

According to the FAC, Plaintiff markets software to spas and beauty salons that is designed to handle point-of-sale register services, appointment booking, inventory control, client data storage, marketing, and payroll services.  FAC ¶ 2. Through a partnership with a company called Textmunications, Plaintiff also purports to offer text-message based appointment reminders and follow-ups,

---

[2] Factual allegations in the FAC are assumed to be true for purposes of this motion only.  Any additional facts concerning Defendants provided in this Section are for background only, and the merits of this motion do not turn on them.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

something Plaintiff's software apparently cannot do on its own. *Id.* ¶ 20. Plaintiff markets this software under the name ProSolutions Spa and Salon Management Software. *Id.* ¶ 2.

The salons and spas input data regarding their own customers and those customers' transactions into Plaintiff's software. The software, in turn, stores that data.[3] *Id.* ¶ 19. The FAC defines this information as the "Stored Data." *Id.* The FAC makes the dubious claim that Plaintiff, rather than the salons and spas who subscribe to Plaintiff's software, somehow owns the subscriber's customer lists and transaction history that comprise the Stored Data. *See, e.g., id.* ¶¶ 19, 40.[4] Pointedly, the FAC fails to allege any contractual basis for Plaintiff's appropriation of its subscribers' customer information. Nor could it; Plaintiff's license agreement with its subscribers, a copy of which is attached as Exhibit 1 to the Declaration of Jennifer L. Kelly filed concurrently herewith, makes no mention of subscribers' customer information, much less grant Plaintiff ownership rights to that information or otherwise restrict how subscribers can use that data.[5] Nevertheless, the FAC, as

---

[3] For ease of reference, this motion refers to the salons and spas that license ProSolutions' software as "subscribers." The subscribers' clients are in turn referred to as the "customers."

[4] For the purposes of this motion, Defendants do not challenge this contention, though plan to do so on the merits should it be required.

[5] The Court can properly consider Plaintiff's License Agreement with its subscribers on this motion under the "incorporation by reference" doctrine. *See, e.g., Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). Under this doctrine, courts routinely consider documents not physically attached to the complaint, as long as the complaint references or otherwise relies on them and their authenticity is not reasonably subject to dispute. *See Knievel*, 393 F. 3d at 1076-66; *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Branch v, Tunnel*, 14 F.3d 449, 453 (9th Cir. 1994); *Coto*, 593 F.3d at 1038; *Graphic Arts Sys. v. Scitex Am. Corp.*, No. CV 92-6997, 1993 U.S. Dist. LEXIS 21052, at *13 (C.D. Cal. May 25, 1993) (holding it was appropriate to consider contracts not attached to complaint on a motion to dismiss because they were referenced, and because "the representations in the contracts will be a decisive factor in determining whether plaintiffs have stated a claim upon which relief can be granted"). Here, authenticity cannot be disputed as the License Agreement was submitted and its authenticity attested to by Plaintiff in this action prior to its removal. Kelly Decl. ¶ 2 & Ex. 1.

*Footnote continued on next page.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

discussed below, bases a number of causes of action on this unsubstantiated claim of ownership, and Plaintiff's apparent view that it can somehow prohibit its subscribers from using their own customer information and lists—the so-called Stored Data—with the software of other companies like Demandforce.

Demandforce offers a complementary software product to Plaintiff's. Demandforce's software is designed to help businesses efficiently market and communicate to customers and potential customers.  Using Demandforce in conjunction with ProSolutions, subscribers can design and execute automated e-mail and text message-based marketing campaigns, send newsletters, and send e-mail and text message appointment reminders and confirmations.  In addition, Demandforce provides tools for building and maintaining a businesses' online reputation and for business and consumer networking.  Unlike Plaintiff's software, Demandforce is not a general point-of-sale service system, inventory, or payroll tool—it is primarily a marketing and customer communication tool that works in conjunction with the point-of-sale system employed by the subscriber. Demandforce primarily markets its product to businesses within the automotive, animal care, dental, medical, professional service, and spa and salon industries.  As noted in Plaintiff's FAC, Demandforce recently was acquired by Intuit Inc.  *Id.* ¶ 4.

### B.   Plaintiff's Lawsuits and Claims

Plaintiff originally commenced this action in Los Angeles Superior Court on August 8, 2012, asserting six claims for relief against Defendants.  Those six claims were:  (1) intentional interference with contract; (2) intentional interference with prospective economic advantage; (3) conversion; (4) unfair competition (common

Alternatively, the Court can take judicial notice of the License Agreement because its authenticity and contents are "not subject to reasonable dispute" and its contents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  As noted above, Plaintiff has attested to the accuracy of its License Agreement under oath in this proceeding before it was removed.  Such public records are properly the subject of judicial notice.  *See, e.g., Cazares v. Pacific Shore Funding*, No. CV04-2548, 2006 WL 149106, at *10 n.8 (C.D. Cal. Jan. 3, 2006).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

law); (5) "injunction"' and (6) negligent interference with economic advantage. Dkt. No. 1, Ex. 1.  Plaintiff generally alleged in that Complaint that Demandforce misrepresented to Plaintiff's subscribers that Demandforce and Plaintiff were affiliated and that Plaintiff's software did not function properly, and that Plaintiff's customers who are also using Demandforce's software unlawfully provided Demandforce with access to the Stored Data.

On September 27, 2012, Defendants removed this action to this Court on the basis that Plaintiff's claims (though carefully pleaded to hide it) arise under federal law.  Dkt. No. 1.  On October 1, 2012, counsel for Defendants met and conferred with Plaintiff's counsel and explained that Defendants intended to move to dismiss Plaintiff's Complaint given that none of the claims adequately pled any right to relief.  At that time, in lieu of facing a motion to dismiss, Plaintiff agreed to amend its Complaint.

On October 12, 2012, Plaintiff filed its FAC now asserting claims for (1) violation of Section 43(a) of the Lanham Act; (2) violation of Section 1201 of the Digital Millennium Copyright Act ("DMCA"); (3) defamation; (4) intentional interference with contractual relations; (5) violation of California Penal Code § 502; and (6) violation of California Business and Professions Code § 17200.  These claims are based on the same two general theories of liability pled in the original Complaint.  As explained below, while Plaintiff has changed the names of the claims it purports to bring, their nature remains the same and Plaintiff has still failed to state a claim.

## DISCUSSION

## I.    LEGAL STANDARDS

A motion to dismiss should be granted if the plaintiff is unable to articulate facts establishing a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Wilson v.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *Hewlett-Packard Co*., 668 F.3d 1136, 1140 (9th Cir. 2012).  "[A] plaintiff's

2   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

3   than labels and conclusions, and a formulaic recitation of the elements of a cause of

4   action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint

5   must allege facts which, when taken as true, raise more than a speculative right to

6   relief.  *Id*.  The facts must "nudge [the] claims across the line from conceivable to

7   plausible." *Id*. at 570.  *Twombly* "serves to remind the district courts that they are

8   entitled to 'insist upon some specificity in pleading before allowing a potentially

9   massive factual controversy to proceed.'" *Belodoff v. Netlist, Inc.*, No. 07-00677,

10  2008 WL 2356699, at *12 (C.D. Cal. May 30, 2008) (quotation omitted).

11        In ruling on a motion to dismiss, the Court need not accept as true any

12  conclusory allegations, legal conclusions, unwarranted deductions of fact or

13  unreasonable inferences.  *See Allstate Ins. Co. v. Countrywide Fin. Corp.,* 842 F.

14  Supp. 2d 1216, 1223 (C.D. Cal. 2012); *Clegg v. Cult Awareness Network*, 18 F.3d

15  752, 754-55 (9th Cir. 1994).  The Court may also disregard allegations that are

16  contradicted by documents that are attached to the complaint, incorporated by

17  reference, or otherwise judicially noticeable.  *See Shwarz v. United States*, 234 F.3d

18  428, 435 (9th Cir. 2000); *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293 (9th Cir.

19  1988); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Parrino*

20  *v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998);[6] *Intri-Plex Technologies, Inc. v.*

21  *Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

22        As this Court recently recognized, where a claim is defective only in part, a

23  motion to strike under Rule 12(f) may be the appropriate method for attacking that

24  defect.  *See Cabral v. Supple, LLC*, No. 12-00085, 2012 U.S. Dist. LEXIS 137365,

25  at *7 (C.D. Cal. Sept. 19, 2012) (Fitzgerald, M.J.) (opining that the "proper

26  _____

27  [6] This furthers the policy of preventing plaintiffs from surviving motions to dismiss
    "by deliberately omitting references to documents upon which their claims are
28  based," or otherwise failing to attach referenced documents to their complaints
    which reveal the flaws in their claims.  *Parrino*, 146 F.3d at 706.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

procedural vehicle" for attacking specific allegations in support of a claim, as opposed to the claim in its entirety, may be a Rule 12(f) motion to strike) (citing *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009); *Henderson v. J.M. Smucker Co.*, No. 10-4524, 2011 WL 1050637, at *3 (C.D. Cal. March 17, 2011)).[7] Indeed, Rule 12(f) specifically authorizes the court to strike a pleading or any portion thereof "on its own" at any time.  Fed. R. Civ. Proc. 12(f)(1).  Other courts have couched such partial disposition of claims on Rule 12(b)(6) dismissal grounds. *See Architectural Mailboxes, LLC v. Epoch Design, LLC,* No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180, at *18 (S.D. Cal. Apr. 28, 2011) (dismissing Lanham Act unfair competition claim to the extent it relied upon an alternate and deficient false designation of origin theory while allowing this same claim to go forward on a false advertising theory); *Burch v. GMAC Mortg., LLC*, No. C-09-4214, 2010 U.S. Dist. LEXIS 23659, at *5 n.1 (N.D. Cal. Mar. 15, 2010) (dismissing Truth in Lending Act claim to the extent it relied upon a deficient failure to deliver theory while allowing this same claim to go forward on a second alternate theory); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1055 (E.D. Cal. 2009) (granting motion to dismiss as to certain specific theories plead in support of a cause of action).

## II.   INTUIT SHOULD BE DISMISSED FROM THE ACTION BECAUSE PLAINTIFF HAS NOT ALLEGED ANY WRONGDOING ON ITS PART.

Plaintiff has not alleged, anywhere in the FAC, that *Intuit* has done anything wrong.  Instead, Plaintiff seeks to hold Intuit liable solely because it is the parent corporation of Demandforce.  "It is a general principal of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61,

---

[7] Alternative authority for striking a portion of a claim may be found in Rule 1 (which requires the Federal Rules to be applied to secure the "just, speedy and inexpensive determination of every action and proceeding") and Rule 8 (which requires a "short and plain statement" of the claim).

118 S.Ct. 1876, 1884, 141 L.Ed.2d 43, 56 (1998) (citation omitted); *see also Inst. of Veterinary Pathology, Inc. v. Cal. Health Laboratories, Inc.*, 116 Cal. App. 3d 111, 119, 172 Cal. Rptr. 74, 77 (1981) ("A parent corporation is not liable for the torts of its subsidiaries simply because of stock ownership").  Some factual showing that the parent directed, participated, or should otherwise be responsible for the acts of its subsidiary is universally required for liability to attach to a parent for acts of its subsidiary.  *See, e.g., Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 560-61 (S.D.N.Y. 2011) (Lanham Act claim dismissed against parent corporation because plaintiff did not allege non-conclusory facts showing that the parent knew of the alleged wrongful conduct and directly participated in it); *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 960-61 (N.D. Cal. 2010) (denying motion for summary judgment seeking secondary liability under the California Penal Code § 502 and the CFAA because the plaintiff did not show that the parent directed any unlawful access to computers); *In re Cal. Title Ins. Antitrust Litig.*, No. 08-01341,  2009 U.S. Dist. LEXIS 43323, at *25-30 (N.D. Cal. May 21, 2009) (dismissing claims against parent corporations where complaint was devoid of factual allegations demonstrating a basis for liability against the corporate parent).

Here, all of Plaintiff's allegations are directed at Demandforce, rather than Intuit.  The FAC is devoid of any allegation that Intuit had any interaction with ProSolutions, had any communications with subscribers of ProSolutions, or otherwise had any role in this dispute.  In fact, the sole allegation regarding Intuit is that "[i]n May 2012, Intuit bought DemandForce."  FAC ¶ 5.  Plaintiff has not alleged, as it must, that Intuit directed, participated, or should otherwise be responsible for the acts of Demandforce.  Accordingly, all of the claims against Intuit should be dismissed.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## III. **PLAINTIFF HAS FAILED TO ALLEGE ANY SUPPOSED MISREPRESENTATIONS WITH SUFFICIENT PARTICULARITY.**

As to Demandforce, the FAC falls short of meeting Federal Rule of Civil Procedure 8's basic requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief," much less the greater particularity required for claims sounding in fraud. Fed. R. Civ. Proc. 9(b). Nearly all of Plaintiff's claims are based, at least in part, on vague allegations that Demandforce misrepresented its relationship with Plaintiff to Plaintiff's subscribers and misrepresented that certain performance issues were caused by Plaintiff's software. Specifically, Plaintiff has asserted these theories in support of its Lanham Act claims, its California UCL fraud prong claim, and its intentional interference claim, among others. FAC ¶ 10 (alleging that Demandforce is "misrepresenting its association with ProSolutions"); FAC ¶¶ 13-15 (on Lanham Act claim, alleging that Demandforce represented that it was, *inter alia*, a "certified integration partner" of ProSolutions and that its software was integrated with ProSolutions in a manner "calculated to deceive customers" and that these statements constitute a "false or misleading statement of fact")); ¶ 48 (on UCL claim, alleging that Demandforce engaged in "fraudulent business practices" by alleging that it was a "certified integration partner" of ProSolutions"); ¶ 31 (on intentional interference claim, alleging that Demandforce's "false statements have caused plaintiff's customers to terminate their licenses with it").[8] Plaintiff has further alleged that Demandforce took these actions with the specific intent to deceive Plaintiff's customers. *Id*. ¶ 14.

Where, as here, a plaintiff purports to bring claims under Section 43(a) of the Lanham Act based on alleged misrepresentations, the fraud prong of California's UCL, or for intentional interference based on allegations of intentional

---

[8] Plaintiff's intentional interference claim is apparently premised on both a theory of misrepresentation and a theory that Demandforce induced Plaintiff's subscribers to breach their license agreements with Plaintiff when Demandforce's software accessed data stored on Plaintiff's subscribers' computers. FAC ¶ 31.

misrepresentation, those claims sound in fraud and must meet the heightened

pleading standard of Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Rpost*

*Holdings, Inc. v. Trusifi Corp.*, No. 11-2118, 2011 WL 4802372, at *3 (C.D. Cal.

Oct. 11, 2011) ("the Court concludes that Rule 9(b) applies to Plaintiff's false

advertising claim under the Lanham Act"); *Ecodisc Tech. AG v. DVD Format/Logo*

*Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (claim under Section

43(a) of the Lanham Act based on alleged misrepresentations to rival's customers is

governed by Rule 9(b)); *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, ___ F. Supp.

2d. ___, (No. 11-06348), 2012 WL 994674, at *6 (N.D. Cal. Mar. 23, 2012)

(finding claims for intentional interference with prospective economic relations,

false advertising and false designation of origin under Section 43(a) of the Lanham

Act, unfair competition and false advertising under California Business and

Professions Code §§ 17200 & 17500 based on a theory of intentional

misrepresentation must be pled in compliance with Rule 9(b)); *Kilopass Tech., Inc.*

*v. Sidense Corp.*, Nos. 10-02066, 11-04112, 2012 WL 4497346, at *3 (N.D. Cal.

Sept. 28, 2012) ("Defendant's false advertising claim and related intentional

interference with prospective economic advantage and unfair competition claims

must be plead with particularity pursuant to Fed. Rule Civ. Proc. 9(b)").

      To comply with Rule 9(b), Plaintiff must plead the familiar "who, what,

where, when, and how" of the alleged misrepresentations.  *Vess v. Ciba-Geigy*

*Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Such allegations must, at a minimum,

establish the "time, place, and specific content of the false representations as well as

the identities of the parties to the misrepresentation."  *Schreiber Distrib. Co. v.*

*ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Conclusory

allegations will not do; specificity in the facts is required.  *Moore v. Kayport*

*Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

      Plaintiff fails to satisfy this basic requirement.  The only allegedly false

representations that Plaintiff identifies in the FAC are that Demandforce

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   purportedly "stated in promotions, advertising, and marketing in commerce that

2   ProSolutions is a 'certified integration partner,' of DemandForce, that ProSolutions

3   is 'affiliated,' and/or 'partnered' with DemandForce, and that DemandForce

4   software is integrated with ProSolutions software."  FAC ¶ 13; *see also id*. ¶ 48.[9]

5   Elsewhere, and not specifically as to these causes of action, Plaintiff has alleged

6   that "Demandforce tells plaintiff's customers who inquire about malfunctions that

7   plaintiff's software causes the problem."  *Id*. ¶ 23.

8         None of these allegations are sufficient.  Plaintiff does not identify, as it

9   must, to whom specifically Demandforce made these statements; who at

10   Demandforce made them; when they were made; if they were made orally, in

11   writing, on the Internet, or by some other means; and, most crucially, the specific

12   content of the misrepresentations.  As such, to the extent Plaintiff's Lanham Act,

13   UCL fraud prong, and intentional interference claims rely on a theory of

14   misrepresentation, they should be dismissed for failure to meet the heightened

15   pleading standard of Rule 9(b).[10]

16   **IV.   PLAINTIFF'S LANHAM ACT CLAIM FAILS BECAUSE PLAINTIFF
        DOES NOT ALLEGE THAT DEMANDFORCE ENGAGED IN
17        "COMMERCIAL ADVERTISING OR PROMOTION."**

18         Plaintiff's also fails to allege that Demandforce made any false or misleading

19   representations in "commercial advertising or promotion" within the meaning of

20   Section 43(a) of the Lanham Act.  The Lanham Act is not a general unfair

21   competition law.  It extends only to misleading statements made in the course of

22   "commercial advertising or promotion."  *See* 15 U.S.C. §1125(a)(1)(B).  In line

23   with other circuits, the Ninth Circuit has interpreted this limitation to require a

24   plaintiff to demonstrate that the allegedly misleading statements were made in "(1)

25   _____

   [9] It is worth noting that Plaintiff does not commit to any specific purported
26   misrepresentations, instead alleging that Demandforce represented that it was
   "'affiliated' *and/or* 'partnered' with ProSolutions."  *Id*. ¶ 13 (emphasis added).

27   [10] Alternatively, the fraud-based theories underlying the unfair competition and
   interference claims should be stricken pursuant to Rule 12(f).  *See Cabral*, 2012
28   U.S. Dist. LEXIS 137365, at *7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *See, e.g., Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99-1877, 2000 WL 986995, at *7 (C.D. Cal. Feb. 22, 2000) (citing *Coastal Abstract Serv. v. First Am. Title,* 173 F.3d 725, 734 (9th Cir.1999)).  Generally, isolated statements to customers, especially reactive oral statements, are insufficient to qualify as advertising or promotion under this standard. *See, e.g., Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) (recognizing that "businesses harmed by isolated disparaging statements do not have redress under the Lanham Act" and that approximately 30 oral statements were not sufficiently widespread to constitute "part of an organized campaign to penetrate the relevant market").  Indeed, the Lanham Act "would be trivialized if it were applied to statements in oral conversations by an individual sales representative to an individual customer concerning matters which an ordinary listener would recognize as personal opinion as opposed to representations of hard definable facts." *Licata & Co. Inc. v. Goldberg*, 812 F. Supp. 403, 408 (S.D.N.Y. 1993).

For purposes of the Lanham Act, Plaintiff alleges only that Demandforce's representations were "stated in promotions, advertising, and marketing."  FAC ¶ 13. This characterization is too vague and generalized to distinguish between non-actionable individualized statements and the types of widespread commercial advertising the Lanham Act is meant to regulate.  This is especially so where Plaintiff has otherwise alleged the very type of reactive individualized statement that courts hold to fall outside the scope of the Lanham Act, for example by alleging Demandforce "tells plaintiff's customers who inquire about malfunctions that plaintiff's software causes the problem." *Id*. ¶ 23.  The FAC's failure to make the necessary allegations is a sufficient and independent basis for dismissing

Plaintiff's Lanham Act claim. *See, e.g.*, *United States v. Broadway Constr., Inc.*, No. 97 C 8284, 1998 WL 246385, at *6 (N.D. Ill. Apr. 24, 1998) (dismissing claims under the Lanham Act because plaintiff's allegations did not demonstrate that the defendant engaged in any "commercial advertising or promotion" as opposed to isolated statements).

## V.   PLAINTIFF DOES NOT ALLEGE THE REQUIRED ELEMENTS FOR A DMCA CIRCUMVENTION CLAIM.

Plaintiff's second count is for violation of the circumvention provisions of the DMCA.  17 U.S.C. § 1201.  The DMCA's prohibition of circumvention is primarily aimed at stopping hacking that results in copyright infringement on the Internet.  *See Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 642-43 (E.D. Pa. 2007).  This claim fails for two separate reasons.  *First*, and most basically, Plaintiff has failed to actually allege that Demandforce engaged in any circumvention.  *Second*, Plaintiff has not and cannot allege that Demandforce circumvented any technological barrier to gain access to a copyrighted work.

### A.   Actual Circumvention Is Required and Plaintiff Has Failed to Plead It.

Not surprisingly, the first requirement for an anti-circumvention claim under Section 1201 of the DMCA is that the defendant actually circumvented some technological measure protecting a work.  17 U.S.C. § 1201(a)(1)(A) ("No person shall circumvent a technological measure that effectively controls access to a work protected under this title").  A person "circumvent[s] a technological measure" under Section 1201(a)(1)(A) where they employ a "means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).

Plaintiff makes no such allegation here.  In fact, the only facts pled

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

concerning Demandforce's supposed circumvention are that it used a "'bot,' or automated software utility, that simulates a human activity" to collect information and did so without authorization.  FAC ¶ 21.  The only technological protection measures that Plaintiff alleges are the use of a password to protect Plaintiff's software and a code to protect its Stored Data.  *Id.* ¶¶ 18-19.  Even accepting these allegations as true, and even assuming that a "code" or a password is sufficient to qualify as a technological measure under the DMCA, Plaintiff does not allege that Demandforce circumvented either, let alone explain how it allegedly did so.[11] Accordingly, Plaintiff's anti-circumvention claim should be dismissed.  *See Dish Network LLC v. World Cable Inc.*, ___ F. Supp. 2d ___, (No. 11-CV-5129), 2012 WL 4470443, at *9 (E.D.N.Y. Sept. 28, 2012) (dismissing DMCA claim and recognizing that "merely alleging that a defendant 'accessed' a copyrighted work that is protected by a technological measure is not enough to state a claim for a violation of the DMCA.  Rather, '[t]he plain language of the statute ... requires a plaintiff alleging circumvention (or trafficking) to prove that the defendant's *access* was unauthorized.'") (citation omitted).

### B.    Plaintiff's "Stored Data" Is Not a Protectable Work.

Even had Plaintiff alleged that Demandforce circumvented a technological measure protecting Plaintiff's software, Plaintiff's claim would still fail.  Under Section 1201(a)(1)(A), the technological measures circumvented must be such that they effectively control access to "a work protected under this title."  17 U.S.C. § 1201(a)(1)(A).  If the work to which the defendant purportedly gained unlawful access through circumvention is not copyrightable, such circumvention is not actionable under the DMCA.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 550 (6th Cir. 2004).

---

[11] Plaintiff's averment concerning Demandforce's alleged use of a bot appears to relate to the means by which Demandforce allegedly "harvested" the Stored Data, not the means by which Demandforce allegedly circumvented any purported password or code.  *See* FAC ¶ 21.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The clear focus of Plaintiff's allegations is that Demandforce accessed the Stored Data, which Plaintiff purports to own, and then harvested it.  FAC ¶ 21. According to Plaintiff, the Stored Data is created by Plaintiff's software and "includes the clients' information, information about the clients' individual customers and the transactions between the client and these customers."  *Id*. ¶ 19.[12] Even ignoring the fact that Plaintiff's own license agreement with its subscribers does not support Plaintiff's claim of ownership (*see* Kelly Decl. Ex. 1), on their face, these allegations demonstrate that the Stored Data cannot be protected under the Copyright Act.

It is a foundational principle of copyright law that facts and data—as opposed to original expression—are not copyrightable.  *See, e.g., Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 340-41, 111 S.Ct. 1282, 1282-1283, 113 L.Ed.2d 358, 358-359 (1991).  In highly limited contexts, collections of facts and data can be protected, but only where they have been "selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  *Id*. (recognizing the telephone book was not sufficiently original and lacked the required "creative spark" to be protected under the Copyright Act).  Plaintiff has made no such allegations here.  According to Plaintiff, the Stored Data is nothing but an automated collection of facts and data about its subscribers' customers collected by its software.  FAC ¶ 19.  That is far from the type of curation that can give rise to copyright in a factual compilation. As such, even if Demandforce did circumvent some technological measures to access the Stored Data—which is contrary to what Plaintiff has actually pled here— it could not give rise to liability under the DMCA.  The Stored Data is not copyrightable.

---

[12] Plaintiff's cursory allegation that Demandforce accessed its software is likewise insufficient to support the claim.  FAC ¶ 23.  But even if it were, Plaintiff's DMCA claim should still be dismissed to the extent it relies on a theory of access to the Stored Data.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Accordingly, Plaintiff's claim for violation of the DMCA should be

2    dismissed in its entirety as failing to allege either circumvention of a technological

3    measure or that the "Stored Data" is protected by the Copyright Act.

4    **VI.   PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE**
     **DEFAMATION OR PRODUCT DISPARAGMENT**
5

6    Plaintiff styles its third count as one for defamation.  The only allegation in

7    support of this claim, however, is that "DemandForce's statements that plaintiff's

8    software causes the functioning difficulties is false."  FAC ¶ 26.  Presumably, this

9    vague allegation refers to Plaintiff's contention, in support of its DMCA claim, that

10   "DemandForce tells plaintiff's customers who inquire about malfunctions that

11   plaintiff's software causes the problem."  *Id.* ¶ 23.

12   Plaintiff's cursory allegation that Demandforce made a statement about

13   Plaintiff's *product*, not *Plaintiff itself,* is insufficient to support a defamation claim.

14   This is a critical distinction.  Defamation claims cannot be premised on allegations,

15   even if true, that someone made disparaging comments about a product.  *See, e.g.,*

16   *Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 972 (9th Cir.

17   1994); *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d. 543, 550, 216

18   Cal. Rptr. 252, 256 (1985) (sustaining demurrer to defamation claim based on

19   allegations that plaintiff's goods were of inferior quality because statements

20   concerning the quality of a plaintiff's product do not defame a plaintiff).

21   Even if Plaintiff instead tried to bring a claim for product disparagement,

22   *Polygram Records*, 170 Cal. App. 3d. at 550, it would still fail.  A claim for product

23   disparagement requires the plaintiff to plead, *inter alia*, that the allegedly false

24   statement was published in writing and that it resulted in special damages.  *See,*

25   *e.g., Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*, No. C-09-00882,

26   2010 WL 890048, at *4 (C.D. Cal. Mar. 8, 2010) (dismissing product

27   disparagement claim because plaintiff failed to adequately plead special damages);

28   *TYR Sport Inc. v. Warnaco Swimwear, Inc.*, 679 F. Supp. 2d. 1120, 1140 (C.D. Cal.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   2009) (dismissing complaint for product disparagement that failed to specifically

2   plead that the allegedly false statement was made in writing and that it caused

3   special damages); *Isuzu Motors Ltd. v. Consumer Union of Am., Inc.*, 12 F. Supp.

4   2d 1035, 1043 (C.D. Cal. 1998) (dismissing product disparagement claim for

5   failure to plead special damages).

6          This latter requirement of special damages must be pled with particularity

7   under Federal Rule of Civil Procedure 9(g). *See, e.g., Beijing*, 2010 WL 890048, at

8   *4. While Plaintiff need not plead a specific dollar amount, it must at least

9   "identify the particular purchasers who have refrained from dealing with him, and

10  specify the transactions of which he claims to have been deprived." *Id.*

11         Plaintiff has met neither requirement. First, Plaintiff has not pled that the

12  statements at issue were made in writing. Instead, Plaintiff's allegation in support

13  of its related (and equally insufficient DMCA claim) reveals Plaintiff's theory that

14  these statements were made orally to Plaintiff's customers. *See* FAC ¶ 23

15  ("DemandForce tells plaintiff's customers who inquire about malfunctions that

16  plaintiff's software causes the problem."). Second, Plaintiff has fallen well short of

17  the level of specificity required for pleading special damages. All Plaintiff has

18  alleged is that:

19              "As a result of DemandForce's statements, plaintiff's customers have

20              terminated their licenses with it, and potential customers have refused

21              to install plaintiff's software under license. Plaintiff has been injured

22              in an amount to be determined at trial."

23  *Id.* ¶ 29. Plaintiff does not allege, as it must, which specific subscribers refrained

24  from dealing with Plaintiff and which specific transactions are at issue. Because of

25  Plaintiff's failure to meet each of these elements, even were the Court to construe

26  its claim for defamation as one for product disparagement, it should still be

27  dismissed in its entirety.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## VII. PLAINTIFF'S INTENTIONAL INTERFERENCE CLAIMS FAIL, REGARDLESS OF THE PLEADING STANDARD.

Plaintiff's fourth and fifth counts are for intentional interference with contractual relations. Plaintiff bases these claims on its two overarching theories of liability—that Demandforce made misrepresentations regarding Plaintiff's product and Demandforce's relationship with Plaintiff, and that Demandforce used the Stored Data contained on Plaintiff's subscribers' computers without Plaintiff's authorization. These claims fail for at least three reasons. *First*, and as already discussed above, Plaintiff's misrepresentation theory fails because Plaintiff has failed to plead any alleged misrepresentations with the required particularity. Fed. Rule Civ. Proc. 9(b). *Second*, Plaintiff's theory of unauthorized "harvesting" of the Stored Data is preempted by the Copyright Act. *Third*, on either theory, Plaintiff has failed to allege the required elements for an intentional interference claim.

### A. Plaintiff's Intentional Interference Claim Is Preempted to the Extent It Is Based on Demandforce's Alleged Copying of the Stored Data.

As explained above, Plaintiff's intentional interference with contract claim is based in part on a theory that Demandforce induced unnamed subscribers of Plaintiff to breach their license agreement with Plaintiff by allowing a "bot" allegedly in Demandforce's software to copy Stored Data from those subscribers' computers. *Compare* FAC ¶ 35 ("[w]hen DemandForce wrote its bot into its software, it intended or was substantially certain that plaintiff's customers who installed DemandForce's software would breach their license agreement with plaintiff) *with* ¶ 21 (referring to operation of DemandForce's bot as "harvest[ing]" Stored Data in violation of plaintiff's license agreement). To the extent that Plaintiff's claims are premised on this theory, they are preempted by the Copyright Act. *See Cabral*, 2012 U.S. Dist. LEXIS 137365, at *7.

The Ninth Circuit has adopted a two-part test to determine if a state cause of action is preempted by the Copyright Act. *Wild v. NBC Universal, Inc.*, 788 F.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Supp. 2d. 1083, 1110 (C.D. Cal. 2011).  A claim is preempted where (1) its "subject

2   matter" falls within the subject matter of copyright as described in 17 U.S.C. §§

3   102 and 103 and (2) "the rights asserted under state law are equivalent to the rights

4   contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright

5   holders."  *Id.*; *see also* 17 U.S.C. § 301(a) (Copyright Act preempts "all legal or

6   equitable rights that are equivalent to any of the exclusive rights within the general

7   scope of copyright as specified by section 106 in works of authorship that are fixed

8   in a tangible medium of expression and come within the subject matter of copyright

9   as specified by sections 102 and 103.").  Section 102 of the Copyright Act defines

10  the subject matter of copyright as "original works of authorship fixed in any

11  tangible medium of expression, now known or later developed, from which they

12  can be perceived, reproduced, or otherwise communicated, either directly or with

13  the aid of a machine or device."  17 U.S.C. § 102.

14      A work need not be *copyrightable* to fall within the subject matter of

15  copyright; "'the shadow actually cast by the Act's preemption is notably broader

16  than the wing of its protection.'"  *Selby v. New Line Cinema Corp*., 96 F. Supp. 2d

17  1053, 1058 (C.D. Cal. 2000) (quoting *U.S. Ex Rel. Berge v. Bd. of Trustees of Univ.

18  of Ala*., 104 F.3d 1453, 1463 (4th Cir.)); *see also Montz v. Pilgram Films &

19  Television, Inc*., No. 08-56954, 2011 U.S. App. LEXIS 9099, at *10 (9th Cir. May

20  4, 2011) (recognizing that "the scope of the subject matter of copyright law is

21  broader than the protections it affords").  Thus, even allegations that

22  uncopyrightable elements have been copied can still fall within the subject matter

23  of copyright for the purposes of preemption.  *See, e.g., Seng-Tiong Ho v. Taflove*,

24  648 F.3d 489, 501 (7th Cir. 2011) ("We have concluded that the material in

25  dispute—the equations, figures and text—are not copyrightable.  However, the

26  Copyright Act can preempt state law even when the rights are claimed in

27  uncopyrighted or uncopyrightable materials"); *Nat'l Basketball Ass'n v. Motorola,

28  Inc*., 105 F.3d 841, 849 (2d Cir. 1997) (Copyright Act preemption bars state law

misappropriation claims with respect to uncopyrightable as well as copyrightable elements).

As to the first prong of the test, although Plaintiff has tried to disguise the nature of its interference claim, it still falls within the subject matter of federal copyright law.  In essence, Plaintiff alleges that it owns the Stored Data in its software product on its subscribers' computers, invoking an intangible property right independent of its clients' possession of the data.  FAC ¶ 40.  In turn, Plaintiff alleges that Demandforce's software "access[es]," "harvest[s]," and "use[s]" the Stored Data "without authorization."  *Id*.  ¶¶ 21, 24, 35.  In other words, Plaintiff alleges that Demandforce's software reproduces the Stored Data, which is fixed in tangible form, and that exclusive right belongs to Plaintiff.  Whether the Stored Data, apart from the software it allegedly is stored in, is itself copyrightable, such allegations come within the scope of the Copyright Act.  *See Nat'l Basketball Ass'n*, 105 F.3d at 849.

On the second prong, the Ninth Circuit and Central District have both found that interference claims premised on this type of alleged misappropriation are equivalent to the rights protected under copyright.  *See, e.g., Sybersound Record, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (intentional interference with prospective economic advantage preempted); *Wild*, 788 F. Supp. 2d at 1110-11 (same).[13]  As such, Plaintiff's intentional interference claims based on alleged reproduction of the Stored Data are preempted by the Copyright Act.  Plaintiff's claims should be dismissed or stricken to the extent they rely on this theory.

---

[13] The present case is distinguishable from *Altera Corp v. Clear Logic, Inc*. wherein the Ninth Circuit found a claim for intentional interference with contract not preempted because here, unlike in *Altera*, we are dealing with claims that Demandforce induced a breach through *reproduction* of the Stored Data—a right specifically protected by Section 106 of the Copyright Act, not *use* of the software.  *Altera Corp v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.    Regardless of Preemption, Plaintiff Has Failed to Allege All of the Required Elements of an Intentional Interference Claim.**

Plaintiff's claim for intentional inference fails for the further reason that Plaintiff has not alleged all of the elements required for the claim.  In order to survive a motion to dismiss, an intentional interference with contractual relations claim must allege facts demonstrating "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126, 270 Cal. Rptr. 1, 3 (1990).

The FAC fails to identify a single subscriber that Demandforce supposedly induced to breach its license with Plaintiff.  All Plaintiff alleges is that Demandforce induced "plaintiff's customers" to breach their license agreement with Plaintiff.  FAC ¶¶ 31, 36.  This is not sufficient; specific breaching customers must be identified.  *See, e.g., DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1152-53 (N.D. Cal. 2010) (dismissing claim for inducement for breach of contract because complaint merely referred to plaintiff's licensees, as a group, without identifying any individually).

Additionally, Plaintiff's Fifth Count for Intentional Interference, which rests on the theory that "Plaintiff's customers who ran DemandForce's software breached their license by allowing DemandForce to access plaintiff's software without permission" (*id*. ¶ 34), also fails because, even assuming Demandforce's software accessed Plaintiff's, providing "access" to a third party would not constitute a breach of the License Agreement.  Paragraph 33 of the FAC recites the relevant language of ProSolutions' License Agreement with Subscribers:  "You may not modify, adapt, translate, reverse engineer, decompile, disassemble, or create derivative works based on the SOFTWARE . . . without the prior written

Fenwick & West LLP
Attorneys at Law
San Francisco

consent of [plaintiff]." *See also* Kelly Decl. Ex. 1.  Critically, subscribers are not prohibited from providing access to "plaintiff's software without permission." *Id.* ¶ 34; Kelly Decl. Ex. 1.

Accordingly, as Plaintiff has failed to plead a breach or other interference with its contractual relations with its subscribers, this constitutes an independent basis to dismiss this claim.  *See Semi-Materials Co., Ltd. v. SunPods, Inc.*, No. 11-CV-0671, 2012 U.S. Dist. LEXIS 128584 (N.D. Cal. Sept. 10, 2012) (dismissing interference with contract claim where plaintiff failed to plead any actual disruption of the contractual relationship).  Moreover, because such conduct would not be a breach under the actual terms of License Agreement, no amendment could cure this defect.  The claim should be dismissed with prejudice.

## VIII.  PLAINTIFF CANNOT STATE A CLAIM FOR VIOLATION OF CALIFORNIA PENAL CODE § 502.

Plaintiff's FAC also attempts to state a cause of action under California Penal Code § 502(c)(1), alleging that Demandforce unlawfully accessed Plaintiff's subscribers' computer systems.  FAC ¶¶ 39-45.  Liability under Section 502 is premised on, among other things, unauthorized "access" to "a computer, computer system, or computer network."  Cal. Penal Code §§ 502(c)(1) (providing elements of cause of action); 502(b)(1) (defining "access").

Plaintiff's claim fails for lack of standing.  Plaintiff must allege that it is the owner or lessee of the computer system that was unlawfully accessed.  *See* Cal. Penal Code § 502(e)(1) (providing a limited private cause of action to the "owner or lessee" of the computer system unlawfully accessed); *see also Mahru v. Superior Court*, 191 Cal. App. 3d 545, 548-49 (1987) (employee of a technology firm was not guilty of a violation of Section 502 where he altered files in a computer housed in a credit union because the technology firm, not the credit union, actually owned the computer).  Here, the FAC does not allege that Demandforce accessed any computer system owned by *Plaintiff*.  To the contrary, it explicitly alleges that

Demandforce accessed *Plaintiff's subscribers' computers*.  FAC ¶ 42.

Accordingly, Plaintiff has not and cannot state a claim under Section 502 and this

claim should be dismissed with prejudice.

## IX.    REGARDLESS OF THE APPLICABLE PLEADING STANDARD, PLAINTIFF'S UCL CLAIM FAILS.

Finally, Plaintiff purports to assert a claim under both the fraud prong and

unlawful prong of California's Unfair Competition Law based on the same

allegations of supposed misrepresentations made by Demandforce.  *Id*. ¶¶ 46-49.

California's UCL prohibits what it generally refers to as "unfair," "fraudulent," or

"unlawful" business practices.  *See* Cal. Bus. & Prof. Code § 17200.  As with all of

the claims in Plaintiff's FAC, these fail as well.

Plaintiff's unlawful prong claim is based on Demandforce's alleged

violations of the Lanham Act, the DMCA, and California Penal Code § 502.  *Id*. ¶

47.  Because each of these predicate claims fails, this claim necessarily fails as well.

Plaintiff's fraud prong claim is based on Plaintiff's theory that Demandforce

engaged in a series of intentional misrepresentations concerning Demandforce's

relationship with Plaintiff and Plaintiff's products.  *Id*. ¶ 48.  As explained above,

Plaintiff's claim fails because it does not plead the alleged misrepresentations with

sufficient particularity.  Plaintiff's claim also fails because Plaintiff does not allege

any reliance by any of its subscribers on the alleged misrepresentations.  Reliance is

a required element for claims under the UCL's fraudulent prong.  *See In re Tobacco*

*II Cases*, 46 Cal. 4th 298, 328, 93 Cal.Rptr.3d 559, 583 (2009) (to meet the

standing requirement for the UCL a plaintiff "must plead and prove actual

reliance").  Accordingly, regardless of the applicable pleading standard, Plaintiff's

fraudulent prong claim fails.

## CONCLUSION

For the foregoing reasons, Demandforce and Intuit respectfully request that

Plaintiff's FAC be dismissed in its entirety.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2    Dated:  October 29, 2012              FENWICK & WEST LLP

3
                                          By:/s/ Jennifer L. Kelly
4                                              Jennifer L. Kelly

5                                         Attorneys for Defendants
                                          DEMANDFORCE, INC. and
6                                         INTUIT INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO